# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

## CIVIL NO. 1:05CV321

| | | |
|---|---|---|
| KATRINA JOINER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM AND** |
| | ) | **ORDER** |
| REVCO DISCOUNT DRUG | ) | |
| CENTERS, INC., d/b/a CVS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant Revco/CVS's (CVS)

motion to compel discovery of Plaintiff's settlement with ChoicePoint

Services and its motion for summary judgment.[1]  The parties have filed

extensive briefs and exhibits in support of their respective positions and the

matter is now ripe for ruling.

---

[1] On September 11, 2006, the Plaintiff provided the Court with notice of a tentative settlement agreement with Defendant ChoicePoint Services. On October 26, 2006, Joiner filed a stipulation dismissing all claims against ChoicePoint.

# I.  BACKGROUND

The Plaintiff (or Joiner) was hired by CVS as a cashier in one of its stores in Asheville, North Carolina, in September 1997.  **Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed October 30, 2006, at 7.**  On September 22, 2004, Joiner picked up a prescription for her father from the CVS pharmacy and left the store without paying the $5.00 co-pay for the prescription.  **Defendant's Memorandum in Support of Motion for Summary Judgment, filed October 13, 2006, at 5; Plaintiff's Memorandum, *supra*.**  CVS investigated the incident by interviewing witnesses including Joiner, which ultimately produced a voluntarily written statement by Joiner admitting to taking the prescription out of the store without paying for it.  Despite Joiner's insistence that she did not intend to take the prescription without paying for it, and that the incident occurred due to a cashier's error, CVS terminated her employment on October 29, 2004.  **Defendant's Memorandum, at 5-8; Plaintiff's Memorandum, at 8-11; *see also*, Defendant's Exhibit 14, CVS Voluntary Statement by Plaintiff Joiner, dated October 28, 2004, *attached to* Deposition of Katrina Joiner.**

CVS is a contributor to ChoicePoint Services' database, commonly known as "the Esteem Database," which provides numerous retailers and potential employers with information about individuals who have been discharged by previous employers for theft. **Defendant's Memorandum, at 8-9.** Following Joiner's termination from employment, CVS filed a report with ChoicePoint detailing the reasons for Joiner's discharge. *Id.* **at 10-11.** Specifically, CVS detailed its termination of Joiner's employment as a result of a "policy violation" in the CVS internal employee database. *Id.* **at 8.** In its report to ChoicePoint, CVS stated Joiner's employment was terminated due to "other fraud," and CVS included a copy of Joiner's written admission statement with the report. *Id.* **at 11.** At some point, the reason for discharge listed in the ChoicePoint report regarding Joiner was changed from "other fraud" to "theft of drugs." *Id.* **at 12;** *see also* **Defendant's Exhibit 33, Esteem Inquiry Maintenance Form,** *attached to* **Joiner Deposition (showing an unknown individual crossed out the words "other fraud" under the category "Theft Type" and replaced them with the written word "drugs" on the report).** CVS contends this change was made by a ChoicePoint employee, and not by a CVS

employee, which Joiner does not dispute.[2]  *Id.*; *see also,* **Plaintiff's Memorandum, at 12; Joiner Deposition at 206-10, 212-13.**  Additionally, CVS states that ChoicePoint does not request the employer to provide an explanation of the employee's state of mind while committing the theft.  *Id.* **at 11.**

Following her employment with CVS, Joiner applied for positions at Home Depot and Lowe's Home Center.  **Plaintiff's Memorandum, at 12-13.**  Both Lowe's and Home Depot refused to hire Joiner, basing their decisions in part on the information contained in the ChoicePoint report regarding her previous "theft" incident at CVS.  *Id.* **at 13.**  Five months after first learning of the content of the ChoicePoint report (as a result of being denied employment by Lowe's), Joiner contacted ChoicePoint to dispute the information contained in her report.  *Id.* **at 13.**  ChoicePoint then contacted CVS regarding Joiner's objection to the information provided by CVS in its original report regarding Joiner.  **Defendant's Memorandum, at 13-14.**  A CVS employee reviewed Joiner's file and concluded that Joiner's

---

[2] CVS maintains that, "had ChoicePoint followed their procedures described on its own Esteem maintenance form, Joiner's CVS incident never would have been reported to other Esteem members."  **Defendant's Memorandum, at 19 n.20.**

admission statement did not contain the elements necessary to justify a report being sent to ChoicePoint. *Id.* **at 14.** Accordingly, CVS withdrew its original report regarding Joiner from the ChoicePoint database. *Id.*

Joiner filed the present action against Defendants ChoicePoint and CVS on October 27, 2005, for damages arising from Joiner's termination of employment from CVS and its subsequent reporting of her termination to ChoicePoint Services. Specifically, Joiner is suing CVS on claims of libel/slander, tortious interference with prospective economic advantage, blacklisting, and unfair and deceptive trade practices. **Amended Complaint, at 8-13.** The parties have conducted extensive discovery, and CVS now moves for summary judgment on all claims brought against them.

## II. STANDARD OF REVIEW

A motion for summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c).** "Summary judgment is proper

'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" ***Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.***, 407 F.3d 631, 635 (4th Cir. 2005) (quoting ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249 (1986)). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleading[s], but [must] . . ., by affidavits or as otherwise provided in [Rule 56], . . . set forth specific facts showing that there is a genuine issue for trial." **Fed. R. Civ. P. 56(e).** Moreover, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574 (1986).

## III. ANALYSIS

### A. The Fair Credit Reporting Act

The Fair Credit Reporting Act, 15 U.S.C. § 1681 (FCRA), was enacted to ensure privacy and accuracy with regards to credit reporting and contains two clauses which preempt individuals from bringing certain

actions against consumer reporting agencies (such as ChoicePoint

Services, *see* 15 U.S.C. § 1681a(f)), those who furnish consumer credit

information (such as CVS, *see* 15 U.S.C. § 1681s-2(a)), and/or users of

such consumer credit information.  ***See* 15 U.S.C. §§ 1681h(e), 1681t.**

Section 1681h(e) provides,

> no consumer may bring any action or proceeding in the nature
> of defamation, invasion of privacy, or negligence with respect to
> the reporting of information against any consumer reporting
> agency, any user of information, or any person who furnishes
> information to a consumer reporting agency, based on
> information disclosed pursuant to section 1681g, 1681h, or
> 1681m of this title . . . based in whole or in part on the report
> except as to false information furnished with malice or willful
> intent to injure such consumer.

**15 U.S.C. § 1681h(e).**  The FCRA's other preemption clause, found in

section 1681t, provides in pertinent part, "[n]o requirement or prohibition

may be imposed under the laws of any State – (1) with respect to any

subject matter regulated under – . . . section 1681s-2 of this title, relating to

the responsibilities of persons who furnish information to consumer

reporting agencies . . . ." **15 U.S.C. § 1681t(b)(1)(F).**

District courts throughout the country have interpreted these

preemption clauses in different ways.  ***See generally, Barnhill v. Bank of***

***America, N.A.*, 378 F.Supp.2d 696 (D.S.C. 2005) (addressing the three**

**common interpretations of the FCRA's preemption clauses).** For example, one view holds that the language of § 1681t reflects an intent by Congress to repeal the language of § 1681h(e), thus empowering § 1681t to preempt "all state laws which affect the duties of furnishers of information to credit reporting agencies." **Id. at 700 (citing Hasvold v. First USA Bank, 194 F.Supp.2d 1228, 1238-39 (D. Wyo. 2002)).** The Fourth Circuit has not expressly ruled on how the two preemption clauses are to be interpreted, but the general trend among the district courts of the Fourth Circuit is to read § 1681h(e) as preempting certain state common law claims, while § 1681t preempts all related state statutory claims. **Id. at 703; Jeffery v. Trans Union, LLC, 273 F.Supp.2d 725, 727-28 (E.D. Va. 2003).** Further, § 1681t has been interpreted to preempt all state statutory claims and not merely statutory claims specifically relating to credit reporting. **See Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp.2d 356, 362 (E.D. Pa. 2001) ("To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action.").** Accordingly, this Court will also interpret the FCRA's preemption clauses – 15 U.S.C. § 1681h(e) and 15

U.S.C. § 1681t – as applying separately and respectively to common law and statutory claims.

## B.  Libel/Slander

Joiner's first cause of action against CVS is for libel and/or slander. **Amended Complaint, at 8.**  Specifically, Joiner alleges that the report filed by CVS with ChoicePoint constitutes "libel per se and/or slander per se" in that the report contained statements which CVS "knew . . . to be false or, believing them to be true, lacked reasonable grounds for such belief, or made such statements with reckless disregard for whether they were true or false."  *Id.*  Further, Joiner believes the alleged libelous or slanderous statements contained in the ChoicePoint report were made by CVS "out of spite, personal ill-will, and personal malice toward Plaintiff, with the intention of damaging Joiner's . . . reputation, and with the intention to injure Joiner . . . ."  *Id.*

As explained above, the FCRA prevents individuals from bringing claims "in the nature of defamation" against "any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."

**15 U.S.C. § 1681h(e);** *see also Spencer v. Hendersen-Webb, Inc.***, 81 F.Supp.2d 582, 597 (D. Md. 1999) ("FCRA provides qualified immunity from state law defamation claims to those who furnish information to a consumer reporting agency.").** CVS, acting as a furnisher of information to a consumer reporting agency (ChoicePoint) under the FCRA, is protected by the FCRA's preemption clause. *See* **15 U.S.C. §§ 1681a(f), 1681s-2(a), 1681h(e).** Clearly, claims of libel and slander are encompassed by the general term "defamation" in North Carolina law. *See Aycock v. Padgett***, 134 N.C. App. 164, 165-66, 516 S.E.2d 907, 909 (1999) ("There are two separate torts encompassed by the term 'defamation': libel and slander.").** Accordingly, by the express language in the FCRA, Joiner is preempted from bringing a claim of defamation against CVS for furnishing information to a consumer reporting agency, as it did in the present case, unless the information furnished by CVS was false and was communicated with malice or willful intent to injure Joiner. *See also, Schade v. MBNA America Bank, N.A.***, 2006 WL 212147, at \*7 (W.D.N.C. 2006) (holding a defamation claim was preempted by the FCRA because the plaintiff failed to establish malice or intent to injure on the part of the declarant).**

When considering the presence of malice under the FCRA, the Court must adhere to the local common law definition of malice.  **See Cousin v. Trans Union Corp., 246 F.3d 359, 375 (5th Cir. 2001).**  In North Carolina, actual malice for purposes of defamation cases is defined as, "'ill-will or personal hostility on the part of the declarant . . . or by showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity.'"  **Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 461, 524 S.E.2d 821, 825 (2000) (quoting Clark v. Brown, 99 N.C. App. 255, 263, 393 S.E.2d 134, 138 (1990)).**  "[W]here the factual dispute concerns actual malice . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not."  **Anderson, 477 U.S. at 255-56; see also Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 685 (1989) ("The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law.").**

After reviewing the record of this case, it is clear to the undersigned that Joiner's claim of libel and/or slander against CVS is preempted by the FCRA. To begin, there is no substantiated reason for the Court to doubt the truthfulness of the information submitted by CVS in its report to ChoicePoint. After investigating the matter, CVS terminated Joiner's employment based upon the information gathered from Joiner's fellow employees who witnessed the incident and a voluntarily written statement in which Joiner admitted taking the prescription out of the store without paying for it. Joiner did state that she would add certain things to her statement to clarify her mindset and describe her belief of what happened in the incident, but she did not dispute the basic truth of her statement. **Joiner Deposition, at 93-94.** The only aspect of the report that Joiner now disputes is how the incident was classified in the Esteem database – which CVS contends was classified as "other fraud" but later changed by ChoicePoint to state "theft of drugs." This dispute is meaningless because Joiner admitted to voluntarily taking the prescription out of the store without paying for it and with the intention of keeping it permanently, thus technically committing "theft of drugs." ***See State v. Edwards*, 310 N.C. 142, 146, 310 S.E.2d 610, 613 (1984) (stating the elements of**

**larceny/theft are: "1) the wrongful taking and carrying away; 2) of the personal property of another; 3) without his consent; 4) with the intent to deprive permanently the owner thereof. . . . *Intent* to commit the crime of larceny is not an element of the crime of larceny.") (citing *State v. McCrary*, 263 N.C. 490, 139 S.E.2d 739 (1965))).** Therefore, CVS ultimately furnished true information to a consumer reporting agency, which prevents Joiner from bringing the present claim of libel and/or slander against the company under the FCRA.

Even were the truthfulness and validity of CVS's report to ChoicePoint doubted, Joiner has provided no evidence that CVS acted with "malice or willful intent to injure" her in submitting the report. **15 U.S.C. § 1681h(e).** Joiner's allegations of malice are based on pure speculation, which is insufficient to establish a genuine issue of material fact for purposes of summary judgment. *See* **Fed. R. Civ. P. 56(e); Joiner Deposition at 121 ("I feel that they must have had some ill feelings towards me or this would have been handled, investigated properly, and steps would have been [taken] . . . .").** However, as shown by CVS, and as admitted by Joiner in her deposition, the individual CVS employees responsible for actually submitting the ChoicePoint report have never met

Joiner, nor is there any reason to think the individuals harbor any ill-will toward her. **Joiner Deposition, at 121-25, 130, 202-03.** Furthermore, after Joiner disputed the content of the ChoicePoint report, CVS withdrew the report from the Esteem database based not upon the statement being incorrect, but rather based upon Joiner's written statement failing to include one specific element of the incident (the price of the prescription taken out of the store). **Defendant's Memorandum, at 14.** A declarant's subsequent correction of allegedly defamatory statements tends to negate assertions of a declarant's malicious intent. *See Cousin*, **246 F.3d at 375-76 (finding that a declarant "promptly corrected any errors" supported the conclusion that malice was not present to support defamation under the FCRA);** *Shah v. Collecto, Inc.*, **2005 WL 2216242, at \*14 (D. Md. 2005) (noting a company's "affirmative steps to correct" the disputed communications supported a finding of no malice for defamation purposes under the FCRA);** *Bloom v. I.C. Sys., Inc.*, **753 F. Supp. 314, 317 (D. Or. 1990) (holding "[plaintiff] cannot prove that [declarant] acted with malice or willful intent to injure under these circumstances" where the declarant made continuous efforts to notify all potential communications recipients of the statements' disputed**

**validity, and thus plaintiff's defamation claims were preempted by the**

**FCRA).** Accordingly, "[a]bsent evidence of malice, [Joiner's] defamation

claim is barred by the FCRA." *Spencer*, **81 F.Supp.2d at 598.**

As stated above, to survive summary judgment on the defamation

claim, the record must contain sufficient evidence for the Court to believe a

reasonable jury could find for Joiner. Considering the diligence exhibited

by CVS in investigating the matter, the mere speculative and unsupported

allegation of malice and willful intent to injure by Joiner, and uncontested

truth in the report submitted by CVS to ChoicePoint, this Court holds

Joiner's claims of libel and slander against CVS are preempted by the

FCRA, and summary judgment will be granted in favor of CVS on this

claim.

## C. Tortious Interference with Prospective Economic Advantage

Joiner's second claim is against CVS for tortious interference with

prospective economic advantage. Specifically, Joiner alleges CVS

prevented her from obtaining other employment by "knowingly, willfully,

maliciously, and/or recklessly [making] misrepresentations regarding the

circumstances regarding [Joiner's] employment" as well as by failing to

correct the alleged misrepresentations after Joiner disputed the

ChoicePoint report.  **Amended Complaint, at 10.**

"An action for tortious interference with prospective economic

advantage is based on conduct by the defendants which prevents the

plaintiffs from entering into a contract with a third party."  ***Walker v. Sloan*,**

**137 N.C. App. 387, 392-93, 529 S.E.2d 236, 241 (2000) (citing *Owens v.***

***Pepsi Cola Bottling Co.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992)).**

 "Where the claim is based upon wrongful interference with prospective

advantage, plaintiffs must show lack of justification for inducing a third

party to refrain from entering into a contract with them which contract

would have ensued but for the interference."  ***Cameron v. New Hanover***

***Mem'l Hosp., Inc.*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (1982)**

**(citing *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549,**

**140 S.E.2d 3 (1965)).**  Further,

> the general rule prevails that unlawful interference with the
> freedom of contract is actionable, whether it consists in
> maliciously procuring breach of a contract, or in preventing the
> making of a contract when this is done, not in the legitimate
> exercise of the defendant's own rights, but with design to injure
> the plaintiff, or gaining some advantage at [her] expense. . . .
> [I]t was said: "Maliciously inducing a person not to enter into a
> contract with another, which he would otherwise have entered
> into, is actionable if damage results." The word "malicious"
> used in referring to malicious interference with formation of a

contract does not import ill will, but refers to an interference
with design of injury to plaintiff or gaining some advantage at
[her] expense.

**Coleman v. Whisnant, 225 N.C. 494, 506, 35 S.E.2d 647, 656 (1945)**

**(quoting Kamm, Inc. v. Flink, 113 N.J.L., 582, 591, 175 A. 62, 68**

**(1934)); see also Walker, 137 N.C. App. at 393, 529 S.E.2d at 241-42**

**(quoting Coleman).**  Accordingly, for Joiner to succeed on her claim

against CVS for tortious interference with prospective economic

advantage, she will have to show that CVS not only interfered with her

ability to enter into a new contract that would have ensued but for its

statements in the ChoicePoint report, but also that CVS acted maliciously

by interfering without a legitimate justification and with the intent to injure

her or gain some advantage at her expense.  **Id.**

CVS asserts Joiner's claim of tortious interference with prospective

economic advantage is also preempted by the FCRA because it preempts

individuals from bringing claims "in the nature of defamation," and because

the elements composing the claim are similar to those required for a

defamation claim.  **15 U.S.C. § 1681h(e).**  CVS cites no authority in

support of adding tortious interference with prospective economic

advantage to the general category of defamatory actions except to note the

use of malicious intent within both claims. This Court is not persuaded by the brief attempt made by CVS to group this particular claim with the causes of action specifically mentioned in the FCRA. Accordingly, the undersigned holds the FCRA does not preempt Joiner's claim of tortious interference with prospective economic advantage.

However, after reviewing the record, it is obvious to the undersigned that no reasonable jury would find in favor of Joiner on her claim of tortious interference with prospective economic advantage against CVS, and summary judgment should be granted in favor of this particular claim. Applying the standard set out above, and as discussed in the previous section, Joiner has failed to produce any substantial evidence other than unsupported allegations of CVS's malicious intent in filing the ChoicePoint report. Further, to succeed in a claim of tortious interference with prospective economic advantage, Joiner would have to prove CVS intentionally interfered with her potential contracts with Lowe's and Home Depot to either injure her or to gain some advantage at her expense. However, the record is devoid of evidence showing either the advantage CVS gained by filing the ChoicePoint report or CVS's intent to injure Joiner. As with Joiner's claims of libel and/or slander, Joiner's foundation

for her claim of tortious interference with prospective economic advantage is made of mere speculation and assumption, which is insufficient to survive summary judgment. **Fed. R. Civ. P. 56(e).** Finally, even were the Court to find CVS has interfered with Joiner's contract, CVS is exempt from liability because it had a legitimate justification in reporting employee information to ChoicePoint. CVS is part of a voluntary group of employers who receive mutual benefits by providing information on previous employees who potentially could interfere with the legitimate business interest of loss prevention. **Defendant's Memorandum, at 26.** Accordingly, the undersigned finds CVS did not tortiously interfere with Joiner's prospective economic advantage. CVS's actions were justified by the legitimate business purpose of future loss prevention. CVS's motion for summary judgment on Joiner's claim of tortious interference with prospective economic advantage will be granted.

### D. Blacklisting

Joiner's third claim against CVS is for blacklisting. Specifically, Joiner alleges CVS "willfully and/or maliciously attempted to prevent Plaintiff from gaining employment by failing to take the necessary actions

to correct the false and defamatory statements that Joiner had engaged in theft, and had given a verified admission regarding the same." **Amended Complaint, at 11.**

Blacklisting is a statutory offense in North Carolina.  *See* **N.C. Gen. Stat. § 14-355 (2006).**  As stated above, the FCRA preempts individuals from bringing state statutory claims against parties acting as furnishers of information to consumer reporting agencies.  *See* **15 U.S.C. § 1681t(b)(1)(F);** *Barnhill***, 378 F.Supp.2d at 703.**  Although no court has specifically found a plaintiff's claim of blacklisting to be preempted by the FCRA, it is clear to the undersigned that, due to the statutory nature of blacklisting in North Carolina as well as the fact that the basis of Joiner's blacklisting claim is action by CVS taken while furnishing information to a consumer reporting agency (ChoicePoint), the FCRA preempts Joiner's blacklisting claim**.  *See Jaramillo***, 155 F.Supp.2d at 362.**

Even assuming that Joiner's blacklisting claim is not preempted by the FCRA, a grant of summary judgment in favor of CVS is proper. Blacklisting in North Carolina is defined as "any person, agent, company or corporation, after having discharged any employee from his or its service, [who] shall prevent or attempt to prevent, by word or writing of any kind,

such discharged employee from obtaining employment with any other person, company or corporation." **N.C. Gen. Stat. § 14-355;** *see also* ***Holroyd v. Montgomery County*, 167 N.C. App. 539, 545, 606 S.E.2d 353, 357-58 (2004).** The statute also notes, "[t]his section shall not be construed as prohibiting any person or agent of any company or corporation from furnishing in writing, upon request, any other person, company or corporation to whom such discharged person or employee has applied for employment, a truthful statement of the reason for such discharge." **N.C. Gen. Stat. § 14-355;** *see also Holroyd*, **167 N.C. App. at 545, 606 S.E.2d at 358 ("The purpose of the blacklisting statute is not to prohibit employers from communicating truthful information as to the nature and character of former employees. . . . When truthful oral statements were made by [former employers] in response to an inquiry from a prospective employer as to whether they would rehire a former employee, [the North Carolina Court of Appeals] held that § 14-355 did not apply as a matter of law.") (citations omitted).**

"For the statute to be violated, the statements to the prospective employer would have had to have been unsolicited." ***Friel v. Angell Care Inc.*, 113 N.C. App. 505, 511, 440 S.E.2d 111, 115 (1994) (citing *Seward***

***v. Seaboard Air Line Ry.*, 159 N.C. 241, 75 S.E. 34 (1912)).** Therefore,

for Joiner to succeed on her blacklisting claim against CVS, she would

have to prove that CVS sent an unsolicited message to her potential

employers – Lowe's and/or Home Depot – regarding her termination of

employment. This is clearly not the case. Lowe's and Home Depot

requested Joiner's information from CVS via ChoicePoint, and thus the

statements conveyed regarding Joiner's termination of employment from

CVS were privileged under the express language of the statute.

**Defendant's Memorandum, at 12-13; Plaintiff's Memorandum, at 12-**

**13; N.C. Gen. Stat. § 14-355.** Joiner's attempt to focus only on CVS's

communications with ChoicePoint as unsolicited information forming the

basis of her blacklisting claim is unpersuasive. **Amended Complaint, at**

**11; Plaintiff's Memorandum, at 26-27.** ChoicePoint, as a consumer

reporting agency, exists to collect and distribute information on behalf of its

subscribers, such as CVS, to alleviate the burden of responding

individually to each inquiry about former employees. Were the Court to

hold the present case as satisfying the blacklisting statute, not only would

the business and purpose of consumer reporting agencies be significantly

injured, but also the statute's purpose would be ignored by restricting its

privilege to only direct communications between previous and potential employers. Simply because an employer conveys information to another person who then holds the information until it is requested by potential employers should not negate the privilege specifically provided for in the statute. Thus, summary judgment in favor of CVS on this claim is appropriate because the information sent to Joiner's potential employers was, in fact, requested by the employers, thereby entitling the communications from CVS to the privilege expressly provided in the governing statute.

### E. Unfair and Deceptive Trade Practices

Joiner's final claim against CVS is for the violation of North Carolina's Unfair and Deceptive Trade Practices Act, codified at N.C. Gen. Stat. § 75-1.1.

Similar to Joiner's blacklisting claim, this claim arises under North Carolina statutory law. Accordingly, as previously determined by numerous courts in this Circuit, Joiner's claim is preempted by the FCRA. *See Johnson v. MBNA America Bank Nat'l Ass'n*, 2006 WL 618077, at *8-9 (M.D.N.C. 2006); *Schade*, *supra*; *Spitzer v. Trans Union LLC*, 140

**F.Supp.2d 562 (E.D.N.C. 2000),** *aff'd,* **3 F. App'x 54 (4th Cir. 2001)**

**(holding the FCRA preempted plaintiff's claims arising under the**

**North Carolina Unfair and Deceptive Trade Practices Act).**

Were preemption not an issue, the Court would still find Joiner's

claim to be insufficient to survive summary judgment. North Carolina's

Unfair and Deceptive Trade Practices Act "prohibits unfair and deceptive

acts which undermine ethical standards and good faith dealings between

parties engaged in business transactions." *First Atlantic Mgmt. Corp. V.*

*Dunlea Realty Co.,* **131 N.C.App. 242, 252, 507 S.E.2d 56, 63 (1998).**

Further, "a trade practice is unfair if it 'is immoral, unethical, oppressive,

unscrupulous, or substantially injurious to consumers.'" *Id.* **(citing**

*Johnson v. Phoenix Mut. Life Ins. Co.,* **300 N.C. 247, 263, 266 S.E.2d**

**610, 621 (1980)).**

Applying the aforementioned law to the present case, it is clear that

Joiner's claim of unfair and deceptive trade practices should fail on

substantive grounds. While Joiner may have suffered injury resulting from

CVS's reporting of the reasons for her termination to a national consumer

reporting agency, the injury was created by Joiner's own actions and

CVS's actions can hardly be called "immoral, unethical, oppressive,

unscrupulous, or substantially injurious to consumers." **Id.** Like Joiner's previously discussed claims, she has failed to provide the Court with any reason beyond mere allegation and speculation as a basis for her claim of unfair and deceptive trade practices by CVS. Therefore, the Court will grant summary judgment in favor of CVS on the grounds that her claim is preempted by the FCRA and she has failed to present a genuine issue of material fact that could lead a reasonable jury to find in her favor.

## IV. DEFENDANT'S MOTION TO COMPEL

On October 17, 2006, CVS moved the Court for an order compelling the Plaintiff to answer deposition questions regarding the terms of her settlement with then Defendant ChoicePoint Services, Inc. A stipulation of dismissal with prejudice was filed by the Plaintiff and ChoicePoint on October 26, 2006. In response to CVS's motion to compel, the Plaintiff advised that the terms of the settlement were to remain confidential as a condition of the agreement and that CVS had not established a particularized need for the disclosure of the terms of that agreement. Because the Court grants CVS's motion for summary judgment, the motion to compel is now moot.

## V.  ORDER

**IT IS, THEREFORE, ORDERED,** that the motion of CVS to compel is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the motion of CVS for summary judgment is **GRANTED** in its entirety and a Judgment dismissing this action is filed herewith.

Signed: December 12, 2006

Lacy H. Thornburg
United States District Judge